John Metcalf & al

          vs                    No. 7943

John Barbier

February 7th, 1921.

John Metcalf & al

vs                                    No. 7943.

John Barbier,
          Appellant.

Appeal from the 29th Judicial District Court for the
Parish of Plaquemines Hon. Leander H. Perez, Judge.

CHARLES F. CLAIBORNE, JUDGE.

This is a damage suit for the value of property of the
plaintiff appropriated by the defendant and for trespass.

The plaintiff alleged that they were the owners in
possession of a tract of land situated at Empire in the Parish
of Plaquemines on the west bank of the Mississippi River measur-
ing two and three quarters acres front on the Mississippi River
by forty arpents deep -; that their title is derived from John
Mc Donogh who acquired the said property by patent from the
State of Louisiana; that the rear portion of said land extends
into a part of a body of water known as "Bay Adam", where peti-
tioners have cultivated oysters for many years past; that said
Bay Adam is a shallow body of water subject to drainage; that
the defendant  John Barbier has trespassed on petitioners' said
property and taken therefrom at least 200 barrels of oysters
worth $2.00 per barrel.  Plaintiffs pray for $400.00 as the value
of the oysters, and for $1000.00 exemplary damages, and for an
injunction restraining the said John Barbier from removing any
more oysters from plaintiffs' property.

The defendants filed an exception of no cause of action
which was overruled.

For answer the defendants denied that the plaintiffs
had any title to the area upon which it is alleged the trespass
was committed; they averred "that Bay Adam" and the part thereof
claimed by the plaintiffs are parts of the sea and navigable wat-
ers and as such belong to the public, neither the waters nor bot-
toms thereof being susceptible of private ownership, the same
belonging to the State of Louisiana by virtue of its sovereignty,
and being under the jurisdiction and authority of the Department

312

of Conservation of said State"; he further avers that in all that he did he was acting in good faith under a lease from the Department of Conservation having authority in the premises; and he admits having removed oysters from the area claimed by plaintiffs by virtue of said lease.

The case was submitted without argument.

In a careful and well considered opinion the Judge of the District Court rendered judgment in favor of plaintiffs as prayed for.

The validity of plaintiffs' title derived originally from a patent from the State of Louisiana is not questioned. The contention of the defendant, however, is that plaintiffs' title does not extend beyond the land or shore line, and does not embrace any part of Bay Adam which is a navigable body of water. It is admitted that defendant did appropriate oysters which he fished from the bed of the Bay within the area covered by the lines of plaintiffs' patent extending over upon the waters of the Bay. It is also proven that the oysters so fished had been planted there by the plaintiffs.

It is also proven that the defendant acted by virtue of a lease of water bottoms for oyster purposes from the Conservation Commission of Louisiana by virtue of Act 54 of 1914 p 126; Sec. 1 of said Act places the bed of all bodies of water connecting with the Gulf of Mexico under the exclusive control of said Commission.

The sole question for determination therefore remains, did plaintiffs acquire any right of ownership of any kind to any part of the land included within the measurement of his title, extending beyond the shore of Bay Adam and covered by its waters, which the defendants were bound to respect?

Bay Adam is a body of water surrounded by land; it lies near the mouth of, and on the west of the Mississippi in the Parish of Plaquemines; it is connected with that River by the Doullut Canal provided with locks; this canal is about fifteen or twenty acres long; at the mouth of the Canal on the River is Empire City; plaintiffs' lands are about six acres above; the

313

Canal carries boats from the River to the Bay, and from the
Bay to the River; the Bay is about one mile wide by six miles
long; the water is subject to the ebb and flow of the tide; it
is salty or brackish sometimes, and its depth varies from twelve
inches near the shore to six feet in the centre; a bayou in the
north connects it with Bayou Chicot; another on the west with
Half Moon Bay and Bayou Cook; two others on the south with Bayou
Ferrand and Bay Cheri, on the East is Bayou Fontenelle. All
these Bayous flow into Bastian Bay which empties into the Gulf
of Mexico. This country is the seat of the great fish and oyster
industry of Louisiana, which is carried on in small boats, lug-
gers or gasoline, drawing from "fifteen inches to three and a
half feet of water"; these boats all direct their outgoing
course from the River into Doullut Canal, thence over and across
Bay Adam into the several bayous and bays, and the Gulf of Mexico,
and return by the same route; some boats have to follow a cer-
tain channel which is not across plaintiffs' oyster beds, and
sometimes get stranded and have to await the rise of the tide
to clear off. At a distance of about 2500 or 3000feet from the
shore is an island inside of the limits of plaintiffs' title;
they  planted oysters there some thirty years ago, and have
continued doing so; the depth of water there is from one to two
feet; it is there that the defendant committed the trespass and
removed the oysters.

The plaintiffs rely  upon the case of Chauvin vs Louis-
iana Oyster Commission and others.  12∮ La., 10.  That case is
a complete parallel to the case before us.  The facts were that
the plaintiffs were the owners of Section 42 of Township 21 in
the Parish of Terrebonne by a regular chain of title derived
from the State of Louisiana; that Section 42 embraced within
its lines a part of the water and bed of Bay Crocodile; that
it was a salt water Bay, connecting through Bayou East and Bayou
West, Bayou Welch, and Cat Island Lake with the Gulf of Mexico;
that the water varied in depth from one to five feet, and was
subject to the regular ebb and flow of the tide; that the Bay
was about two and one-half miles long and three quarters of a
mile wide.  The defendant oyster commission, which had been

314

created by Act 52 of 1904, leased certain parts of that section to the other defendants for the oyster industry. The plaintiffs prayed for a judgment enjoining the defendants from carrying out the lease or from trespassing over any part of the property covered by their patent. The answer of the defendants, the Louisiana Oyster Commission and others, was:

"That the said Bay is a part of the waters of the State of Louisiana, which belong to her by virtue of her sovereignty, and not by any grant from the United States; that no power has ever been given by the State to any of her officers to alienate such water bottoms; that the portion of the Bay aforesaid claimed by the plaintiffs is a part of the waters of the State, to which she had title from the date of her admission into the Union; and that plaintiffs have no right, title, or 'ownership therein".

The Supreme Court disregarded the defense and said that

" the defendant commission, a mere agency of the State, could not collaterally attack the title derived by the plaintiffs from the State, which as grantor was estopped to assert that at the time of the conveyance it had no title, or that none passed by the deed"; *32 Cyc 1040*

that the title of the defendants, apparently valid, could not be attacked by collateral proceedings, and had to be annulled by direct action; that what the Commission could not do, the other defendants, claiming as lessees from the Commission, could not do. The case is quoted in 130 La., 619, and 125 La., 748 and not overruled. *See 104 La 487 - 112 La 219 - 117 La 91 (94) - 118 La 1052 -*

The reasoning in that case applies with equal force to the case before us. It is reinforced by the legislation of the State and by prior jurisprudence, which have recognized the exclusive right of individuals to the use of bottoms of navigable streams, situated within the State.

Section 1 of Act 106 of 1886, being an act to regulate the oyster industry, provides:

"That all the beds of the rivers, bayous, creeks, lakes, coves, inlets, and sea marshes bordering on the Gulf of

315

Mexico, within the jurisdiction of this State, and not heretofore sold or conveyed by special grants or by sale by this State, or by the United States to any private party or parties, shall continue and remain the property of the State of Louisiana & c ".

Section 2:

"That if any river, bay, lake, bayou, cove, inlet, or pass, makes into or runs through the land of any person, and is comprised within the limits of his lawful survey, such person or other lawful occupant shall have exclusive right to use said body or bodies of water for planting oysters and other shell-fish & c".

The validity of this Statute was recognized in the case of Morgan vs Nagodish, 40 A., 246, when the plaintiff was declared to have the exclusive right to the use of the bed of Bayou Cook, a navigable stream, to which we have referred heretofore in describing Bay Adam. Bayou Cook is one mile long, two acres wide, and twenty feet deep. The Court said:

"The remaining question to be considered is whether or not the bayou, creek, cove or lake, denominated Bayou Cook, is an arm of the Gulf of Mexico, and a part of the sea-shore, and, as such, common property, and not susceptible of private ownership? x x x Whether we take the criterion established by our Code or that by Justinian, and apply to either the evidence in this case, we must conclude that Bayou Cook is not an arm of the Gulf of Mexico, and that its banks form no part of the sea-shore. x x x The District Judge was of the opinion that Bayou Cook was not an arm of the Gulf of Mexico, and that its banks formed no part of the seashore - hence the land in question was not common property, but was susceptible of private ownership, and we are of the same opinion".

If Bayou Cook was not an arm of the sea, much less was Bay Adam, which is further removed from the Gulf of Mexico.

Other Acts of the Legislature also recognized the right of ownership in water beds within the State.

Act 258 of 1910 p 438 reads as follows: Sec. 1

"That the waters of and in all bayous, lagoons, lakes and bays, and the beds thereof, within the borders of the State, not at present under the direct ownership of any person, firm or corporation, are hereby declared to be the property of the State. x x x "

Sec. 2:

" x x x Provided this Act is not intended to interfere with the acquisition in good faith of any waters or the beds thereof transferred by the State of its agencies prior to the passage of this Act & c x x x"

In State vs Bayou Johnson Oyster Co., 130 La., 604, the Court says on page 618:

"It may be, and probably is, true that there is no legal impediment in the way of the State's alienating such property in favor of particular individuals or corporations, save in so far as such alienations might conflict with the power vested in Congress to regulate interstate and foreign commerce & c".

Prior to Act 106 of 1886 there was no statute of the State declaring that the beds of bodies of water were the property of the State and prohibiting the Register of the State Land Office from selling them. This declaration and prohibition were continued in successive acts. Act 110 of 1892 Sec. 1 p 142; Act 121 of 1896 p 170, Sec. 1; Act 189 of 1910 p 302, Sec. 1; Act 52 of 1904 p 113, Sec. 1. If the Register of the Land Office had been without right to sell such beds prior to the passage of those laws there would have been no occasion to pass them.

But we are impressed ourselves with the correctness of the Chauvin decision. The official documents of the State are entitled to full faith and credit, and to the respect of its officials and citizens. It would be an intolerable condition if the officers and citizens of the State could disregard a patent issued by the State and paid for, and treat it, *in the language of the Supreme Court* "as an absolute nullity, worthy of no consideration whatever".

317

The defendant relies upon the cases of Louisiana Navigation Company vs Oyster Commission, 125 La., 740, and upon State ex Rel Board of Commissioners of Archafalaya Basin Levee District vs Capdevielle, 146 La., 94. *See 109 La 632*

In the first case the plaintiff claimed title to a portion of land projecting into the Mississippi Sound and the Gulf of Mexico, and attempted to prevent the defendants from trespassing upon the same. The Supreme Court held that

> "there can be no such thing in this State as private ownership of the bed of a navigable river, and a fortiori can there be no such thing as private ownership of the bed of the sea or of an arm of the sea"

and maintained an exception of no cause of action on that ground, and dismissed the suit. The distinction was thus clearly drawn between an inland body of water and a part of the sea.

The case of State vs Capdevielle was a proceeding by mandamus to compel the Auditor and Register of the State Land Office to execute in favor of the plaintiffs deeds to the beds of Lake Rond and others which they contended had been granted to them by the State under Section 11 of Act 97 of 1890 p 107. The Supreme Court decided that it had never been the intention of the law to transfer those lakes to the Levee Board, and that therefore they were not entitled to deeds for the same. The opinion in that case can have no influence in deciding the case before us.

The evidence establishes to our satisfaction that the defendant appropriated seventy barrels of plaintiffs' oysters of the value of $2.00 a barrel; the defendant did not testify; he admitted in his answer having removed the oysters; the only question was the quantity and value.

The judgment is erroneous in allowing the plaintiffs $1000.00 punitive damages. Under our jurisprudence they are no longer allowed in civil cases. 140 La.,1038; 144 La., 167; 585; 146 La., 678.

It is therefore ordered that so much of the judgment here in in favor of the plaintiffs and against the defendant for the sum of one thousand dollars punitive damages be reversed and annulled, and as thus amended that the judgment be affirmed, the plaintiff and appellee to pay the costs of appeal.